701 S.E.2d 776

Delores NELSON and Bernard Nelson, Parents
of Patrice N., a Minor, Appellants,

v.

PIGGLY WIGGLY CENTRAL, INC., d/b/a Piggly Wiggly
of Bishopville, Inc., Melco of Bishopville, Inc., and
Lola Nelson, Defendants,

of whom Piggly Wiggly Central, Inc., d/b/a Piggly Wiggly
of Bishopville, Inc., and Melco of Bishopville, Inc.
are the, Respondents.

No. 4754.

Court of Appeals of South Carolina.

Heard May 19, 2010.

Decided Oct. 20, 2010.

William W. Wheeler, III, of Bishopville, for Appellants.

D. Michael Freeman, II, of Myrtle Beach, and Thomas E. Player, Jr., of Sumter, for Respondents.

CURETON, A.J.

Delores and Bernard Nelson (Appellants) appeal the entry of summary judgment in favor of Piggly Wiggly Central, Inc., d/b/a Piggly Wiggly of Bishopville, Inc. (Piggly Wiggly), and Melco of Bishopville, Inc. (Melco) (collectively "Respondents"). Appellants argue the circuit court erred in granting Respondents' motion for summary judgment despite the existence of genuine issues of material fact and in finding Respondents owed no duty to Appellants. We affirm.

## FACTS

On August 16, 2004, Appellants' thirteen-year-old daughter, Patrice Nelson (Nelson), accompanied her great-grandmother, Lola Nelson (Grandmother), to the Piggly Wiggly grocery store in Bishopville.[1]  Nelson was familiar with the store, having shopped there before.  After Grandmother pulled her car into a designated parking space adjacent to and facing the side of the store, Nelson exited the car.  As Nelson walked between the building and the front of Grandmother's car, the car accelerated, crossed a concrete wheel stop, and pinned Nelson against the wall.[2]  The impact fractured Nelson's left femur.

In April 2006, Appellants filed suit against Grandmother, Piggly Wiggly, and Melco, alleging Nelson's injuries resulted from their "negligent, careless, reckless, and willful acts." Over the next two years, the parties deposed Appellants, Nelson, their expert, and others.

Appellants' expert witness, Bryan R. Durig, testified he examined the wheel stops in the Piggly Wiggly parking lot and found two different designs.  The more recent wheel stop design consisted of a bar six inches tall with a flat top, vertical sides, and beveled edges between the top and sides.  The older design consisted of a bar four to four and one-eighth inches tall that was sloped on one side.  Durig did not know when the newer design came into use.  According to Durig, the wheel stop in the parking space Grandmother used was of the older, slanted design.  Although he believed a car could drive over the older design more easily than the newer design, Durig conducted no tests to determine the speed or force necessary for a car to cross over the older wheel stop and could give no opinion as to whether or not the newer design wheel stop would have prevented the accident.

Durig took some measurements but did not conduct any tests on the parking lot.  He found the wheel stops were

---

1.  Melco owned the premises and leased them to Piggly Wiggly.

2.  At her deposition, Nelson described the events leading up to the accident: "I got out the car and [Grandmother] realized she was too far back, so I closed the door and walked across, like going into Piggly Wiggly, and she was trying to pull up and the car went forward."

installed four feet away from the building, which allowed approximately two feet between the building and the front bumper of most cars if they did not cross over the wheel stop. Although he testified he found no building code violation in the parking lot, he stated that building codes do not "tell you how to design your parking lot." He was unaware which industry or safety standard governed parking lot design and construction in 1972, when the parking lot at issue was constructed. In addition, he was unaware of any requirement that sidewalks or walkways be placed in front of parking spaces. Nevertheless, he opined the wheel stops in the parking lot were "installed in a defective manner so that they created hazards."

In February 2008, Respondents filed separate motions for summary judgment arguing Appellants failed to establish Respondents owed Nelson a duty of care and arguing the events in the parking lot were not reasonably foreseeable.[3] At the hearing Appellants argued Nelson's injury was entirely foreseeable because the wheel stops were installed too close to the building and there was no room for a pedestrian to escape injury if a car crossed a wheel stop. Appellants also argued the grocery store appeared to recognize a need for sidewalks or curbing around the building as early as 1990, but neglected to install such curbing.[4] The trial court granted Respondents' motions for summary judgment. This appeal followed.

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the

---

3. In addition, Melco's memorandum in support of its motion expressly incorporated the arguments made by Piggly Wiggly.

4. Appellants based this argument on a scale drawing of the store and its parking lot produced by Respondents during discovery. Dated July 9, 1990, the drawing depicts additions to the grocery store, including what appear to be curbing and sidewalk areas around the front and sides of the building. Although Donald Melton, principal shareholder of Melco, admitted making "some additions" to the store in 1990 or 1991, he did not identify the purpose of the drawing. Not all changes reflected in the drawing were made. Moreover, no evidence indicated whether the additions triggered an obligation for Respondents to bring the entire building into compliance with the then-existing building codes or other building standards.

circuit court under Rule 56(c), SCRCP. *Englert, Inc. v. Netherlands Ins. Co.*, 315 S.C. 300, 302, 433 S.E.2d 871, 873 (Ct.App.1993). This standard requires all facts and reasonable inferences to be drawn therefrom to be viewed in the light most favorable to the appellant. *Id.* However, "[a]n appellate court may decide questions of law with no particular deference to the trial court." *In re Campbell*, 379 S.C. 593, 599, 666 S.E.2d 908, 911 (2008). Whether a duty exists in a negligence action is a question of law to be determined by the court. *Doe v. Greenville County Sch. Dist.*, 375 S.C. 63, 72, 651 S.E.2d 305, 309 (2007).

## LAW/ANALYSIS

### I. Genuine Issue of Material Fact

Appellants assert the circuit court erred in granting summary judgment despite the existence of genuine issues of material fact. We disagree.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006). "[F]or purposes of summary judgment, an issue is 'material' if the facts alleged are such as to constitute a legal defense or are of such a nature as to affect the result of the action." *PPG Indus., Inc. v. Orangeburg Paint & Decorating Ctr., Inc.*, 297 S.C. 176, 179, 375 S.E.2d 331, 332 (Ct.App.1988). "A court considering summary judgment neither makes factual determinations nor considers the merits of competing testimony; however, summary judgment is completely appropriate when a properly supported motion sets forth facts that remain undisputed or are contested in a deficient manner." *David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 250, 626 S.E.2d 1, 5 (2006).

■ A plaintiff seeking damages for personal injuries incurred due to a defendant's negligent acts or omissions must prove each element of his cause of action by a preponderance of the evidence. *Grier v. Cornelius*, 247 S.C. 521, 534, 148 S.E.2d 338, 344 (1966). When the burden of proof is by a preponderance of the evidence, a non-moving party need only present a scintilla of evidence to withstand a motion for summary judgment. *Hancock v. Mid–South Management Co., Inc.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009). However:

> A plaintiff cannot create a genuine issue of material fact with the argument that the jury does not have to believe a witness. A party defeats summary judgment by affirmatively demonstrating the presence of a genuine issue of material fact. As Rule 56(e), SCRCP, states, a party "may not rest upon the mere allegations or denials of his pleading[s]."

*Hoard ex rel. Hoard v. Roper Hosp., Inc.*, 387 S.C. 539, 549, 694 S.E.2d 1, 6 (2010) (alteration in original).

■ A plaintiff seeking damages suffered because of a dangerous or defective condition on a defendant's property must demonstrate that the defendant committed a specific act that created the dangerous condition, which in turn caused her injury. *Pringle v. SLR, Inc. of Summerton*, 382 S.C. 397, 404, 675 S.E.2d 783, 787 (Ct.App.2009). Alternatively, she must demonstrate that the defendant had actual or constructive knowledge of an existing dangerous condition and failed to correct it. *Id.*

We affirm the circuit court's finding that no genuine issue of material fact existed. Summary judgment is appropriate when the material facts are not in dispute. *David*, 367 S.C. at 250, 626 S.E.2d at 5. Here, viewing the facts in the light most favorable to Appellants, we find none of the material facts is in dispute. Appellants failed to demonstrate Nelson's injuries resulted from any act of the Respondents that created a dangerous condition or, as is apparently Appellants' contention, that Respondents had actual or constructive knowledge of a dangerous condition and failed to remedy it.

■ It is undisputed that the parking lot was built in 1972, and there is no evidence that its construction, which included

the installation of the wheel stops, violated any code or building standard in effect at that time. Moreover, Appellants' expert could not state that current building or safety standards for parking lots applied to the lot in question. *See Elledge v. Richland/Lexington Sch. Dist. Five*, 352 S.C. 179, 186, 573 S.E.2d 789, 793 (2002) (stating the general rule that evidence of industry standards is relevant to establishing the standard of care in a negligence action). Appellants claim that a 1990 drawing, which arguably shows an addition to the store and curbing in the area of the injury, creates a reasonable inference Respondents were on notice as early as 1990 or 1991 that the installed wheel stops were unreasonably dangerous. Moreover, Appellants also argue their expert's testimony that raised sidewalks are preferred over wheel stops creates an inference that Respondents recognized as early as 1990 the superior safety of the sidewalk design and thus were negligent in not installing sidewalks in conjunction with the 1990 or 1991 renovations. This inferential leap does not create a genuine issue of material fact. *See McKnight v. S.C. Dep't of Corr.*, 385 S.C. 380, 389–390, 684 S.E.2d 566, 570–71 (Ct.App.2009) (holding a non-moving party may not rely on speculation to defeat a motion for summary judgment). The undisputed fact is that Grandmother's loss of control of her vehicle caused Nelson's injury. *See Oliver v. S.C. Dep't of Highways & Pub. Transp.*, 309 S.C. 313, 316, 422 S.E.2d 128, 130 (1992) (ruling causation in fact is proved by establishing that the injury would not have occurred "but for" the defendant's negligence).

## II. Judgment as a Matter of Law

■ Appellants assert the circuit court erred in granting summary judgment by finding Respondents owed no duty of care to Nelson. We disagree.

Initially, we note Appellants pled a cause of action for premises liability arising from negligent or willful acts. *See Pringle*, 382 S.C. at 404, 675 S.E.2d at 787 (quoting *Anderson v. Racetrac Petroleum, Inc.*, 296 S.C. 204, 205, 371 S.E.2d 530, 531 (1988)) ("To recover damages for injuries caused by a dangerous or defective condition on a defendant's premises, a plaintiff 'must show either (1) that the injury was caused by a specific act of the respondent which created the dangerous condition; or (2) that the respondent had actual or construc-

tive knowledge of the dangerous condition and failed to remedy it.'"). The record does not indicate that Appellants later abandoned, or that the circuit court struck, any portion of the complaint. Although Appellants pled Nelson's injury occurred because of Respondents' "negligent, careless, reckless, and willful acts," the circuit court's discussion of duty focused only on negligence. Consequently, only the law relating to establishment of a duty in a negligence context is properly before this court.

A plaintiff prosecuting a negligence claim must demonstrate (1) the defendants owed her a duty of care; (2) the defendants breached that duty by a negligent act or omission; and (3) she suffered damage as a proximate result of that breach. *Bloom v. Ravoira*, 339 S.C. 417, 422, 529 S.E.2d 710, 712 (2000). Whether a defendant has acted negligently is a mixed question of law and fact. *Moore v. Weinberg*, 373 S.C. 209, 221, 644 S.E.2d 740, 746 (Ct.App.2007).

> First, the court must determine, as a matter of law, whether the law recognizes a particular duty. If there is no duty, the defendant is entitled to a judgment as a matter of law. If a duty does exist, the jury then determines whether a breach of the duty that resulted in damages occurred.

*Id.* (internal citations omitted). "Generally, duty is defined as the obligation to conform to a particular standard of conduct toward another." *Id.* A "standard" is "a model accepted as correct by custom, consent, or authority." *Black's Law Dictionary* 1412 (7th ed.1999). "Foreseeability of injury, in and of itself, does *not* give rise to a duty." *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 355 S.C. 614, 618, 586 S.E.2d 586, 588 (2003) (emphasis in original). If the plaintiff fails to prove the defendants owed her a legal duty of care, she fails to prove actionable negligence. *Doe v. Greenville County Sch. Dist.*, 375 S.C. 63, 72, 651 S.E.2d 305, 309 (2007).

Appellants' contention that the circuit court's ruling equates to a statement that Respondents owed "no duty" to Nelson misrepresents the circuit court's decision. The circuit court's actual ruling that Respondents "had no duty to make the parking lot accident proof" is accurate. South Carolina courts have long recognized that merchants owe their customers a

general duty of care: "[a] merchant is not an insurer of the safety of his customer but owes only the duty of exercising ordinary care to keep the premises in reasonably safe condition." *Garvin v. Bi–Lo, Inc.*, 343 S.C. 625, 628, 541 S.E.2d 831, 832 (2001). It is uncontested that Piggly Wiggly was in the business of selling products to the public and Melco owned the premises from which Piggly Wiggly conducted that business. Nelson's unchallenged deposition testimony established that at the time of her injury, she was walking toward the door of the grocery store to help Grandmother, presumably by purchasing groceries. The allegations admitted by Respondents, coupled with Nelson's testimony, established Respondents were merchants and Nelson was their customer. Consequently, the record reflects evidence that Respondents owed Nelson a duty to exercise ordinary care to keep their premises in a reasonably safe condition. *See id.*

In the case *sub judice,* the question, however, is not whether Respondents owed Nelson a duty of care, but whether the scope of the acknowledged duty of reasonable care extends to the particular risk that led to her injury. A plaintiff must identify a duty that the defendant has to protect her from a particular harm to merit consideration of her claim by a jury. *See, e.g., Steinke v. S.C. Dep't of Labor, Licensing & Regulation,* 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999) (requiring circuit court to determine as a matter of law whether a "particular duty" exists before sending the case to a jury). "Where a duty of due care exists, a person is required to consider only the foreseeable risks of his conduct or failure to act. If an injury is not foreseeable, he is not liable for that injury." Hubbard, F.P. and Felix, R.L., *The Law of Torts In South Carolina* 43 (3d ed.2004). This means that the risk must be "reasonably foreseeable" before one is required to take action to prevent the injury. *See, e.g., Hayes v. Peoples Fed. Sav. & Loan Ass'n,* 289 S.C. 63, 66, 344 S.E.2d 624, 625 (Ct.App.1986). Foreseeability "is determined by looking to the natural and probable consequences of the defendant's act or omission." *Baggerly v. CSX Transp., Inc.,* 370 S.C. 362, 369, 635 S.E.2d 97, 101 (2006) (internal citations and emphasis omitted).

Under the facts of this case, Appellants' principal proof of negligence on the part of the Respondents rests upon the

testimony of their expert that the design of the parking lot created an unreasonable risk of harm to Nelson because the wheel stops were improperly constructed and installed and/or Respondents should have installed curbing. The circuit court correctly found Durig's assertion of alternate parking lot designs was insufficient to create a question of fact as to Respondents' duty to conform to any of those designs. Durig attested only to his own preferences rather than to the requirements of any law, ordinance, or recognized industry safety standard. His opinion did not, as a matter of law, establish a duty on Respondents to guard against the possibility that an improperly operated vehicle would injure Nelson. *See Moore,* 373 S.C. at 221, 644 S.E.2d at 746 (requiring circuit court to determine as a matter of law whether a duty exists before sending the case to a jury).

Additionally, Appellants assert that the testimony of Donald Melton, the principal shareholder of Melco, that the area where the accident occurred did not correspond with the 1990 drawing creates a question of fact as to whether Respondents had a duty to renovate the parking lot in accordance with the 1990 plans. As noted above, Appellants' expert could not point to any recognized safety standard or building code that required Respondents to modify the parking lot in 1990 or subsequently.

▆▆▆ In their brief, Respondents point to case law from other jurisdictions addressing whether circumstances such as those present in this case are sufficiently foreseeable to obligate a merchant to protect his customers. We find the Alabama and Florida courts' analysis particularly apropos and hereby adopt it:

> We are not unmindful of the obvious fact that at times operators lose control over the forward progress and direction of their vehicles either through negligence or as a result of defective mechanisms, which sometimes results in damage or injury to others. In a sense all such occurrences are foreseeable. They are not, however, incidents to ordinary operation of vehicles, and do not happen in the ordinary and normal course of events. When they happen, the consequences resulting therefrom are matters of chance and speculation. If as a matter of law such occurrences are held

to be foreseeable and therefore to be guarded against, there would be no limitation on the duty owed by the owners of establishments into which people are invited to enter. Such occurrences fall within the category of the unusual or extraordinary, and are therefore unforeseeable in contemplation of the law.

*Albert v. Hsu,* 602 So.2d 895, 898 (Ala.1992) (quoting *Schatz v. 7–Eleven, Inc.,* 128 So.2d 901, 904 (Fla.Dist.Ct.App.1961)) (quotation marks omitted). In the case at bar, Nelson's injury resulted not from the condition or placement of the wheel stops but from the operation of Grandmother's vehicle. Although not entirely unprecedented, the vehicle's acceleration and contact with Nelson were unexpected and unusual. Consequently, in accordance with *Albert,* this occurrence was legally unforeseeable and beyond the realm of any duty Respondents owed to Nelson. As result, the circuit court did not err in finding Respondents were entitled to judgment as a matter of law.

## CONCLUSION

With regard to the facts of this case, we find the circuit court properly determined that no genuine issue of material fact existed. Therefore, we affirm the circuit court's decision on this issue.

As to whether Respondents were entitled to judgment as a matter of law, we agree with the circuit court's conclusion that Appellants failed to provide any evidence that Respondents owed Nelson a duty of care as relates to the injury she suffered. In addition, we find, under the circumstances present herein, the improper operation of Grandmother's vehicle was not a foreseeable hazard against which Respondents were required to protect Nelson. Accordingly, the circuit court's grant of summary judgment is

**AFFIRMED.**

FEW, C.J., and THOMAS, J., concur.